```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____
ROXANNE MONTAQUE,

                        Plaintiff,            06-CV-6459T

             v.                        **DECISION**
                                              **and ORDER**
MICHAEL J. ASTRUE,
Commissioner of Social Security

                        Defendant.
_____

## INTRODUCTION

Plaintiff Roxanne Montaque ("Montaque" or "Plaintiff"), brings this action pursuant to Titles II and XVI of the Social Security Act, claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments. Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") who heard her case was erroneous because it was not supported by substantial evidence in the record.

Both parties move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner claims that the ALJ's decision was supported by substantial evidence whereas the plaintiff claims the opposite. Because this court finds that the Commissioner's decision was not supported by substantial evidence, judgment on the pleadings is hereby granted for the plaintiff.

**BACKGROUND**

On April 10, 2001, Plaintiff Roxanne Montaque applied for DIB and SSI payments claiming that she became disabled on February 20, 2001 due to depression and paranoid schizophrenia (Tr. 68). Montaque was 36 years-old with one year of college at the time of her application (Tr. 55, 74, 466, 494).

The Social Security Administration ("SSA") initially denied Montaque's application and she thereafter requested an administrative hearing which was conducted by ALJ Bruce Mazzarella on December 11, 2003 (Tr. 29-34, 371-76). The ALJ found Montaque not to be disabled on February 17, 2004 (Tr. 28).

Montaque appealed the ALJ's decision to the Social Security Appeals Council which denied her request for review on July 28, 2006. On September 13th of that year the plaintiff filed this action.

**DISCUSSION**

**I.   JURISDICTION AND SCOPE OF REVIEW**

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also

Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

Both Plaintiff and Defendant move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure.  Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C.S. § 405(g) (2007).  Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the

contents of the pleadings.  <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).  A District Court should order payment of Social Security disability benefits in cases where the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose.  <u>See</u> <u>Carroll</u>, 705 F.2d at 644.  The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made."  <u>Id.</u>  Because this court finds that (1) the ALJ's decision was not supported by substantial evidence and (2) the record contains persuasive proof of disability such that further evidentiary proceedings would serve no further purpose, judgment on the pleadings is hereby granted for the plaintiff.

**II.   STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..."  42 U.S.C. §§ 423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments).  An individual will only be considered "under a disability" if her impairment is so severe that she is both unable to do her previous work *and* unable to engage in

any other kind of substantial gainful work that exists in the national economy.  §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id.  Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment.  20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI).  Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized.  §§ 404.1572(b) and 416.972(b).  Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in her immediate area, whether a specific job vacancy exists for her, or whether she would be hired if she were to apply for work.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  As discussed in section III of this Decision, the ALJ's finding that the plaintiff could engage in substantial gainful work is not supported by substantial evidence in the record as a whole.

### A.   The SSA's Five-Step Disability Evaluation Process

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

    (i)    if the claimant is performing substantial gainful work, she is not disabled;

   (ii)   if the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled;

  (iii)   if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry

   (iv)   if the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled;

    (v)   even if the claimant's impairment or impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). The ALJ in this case performed the required five-step evaluation and determined: (i) that the plaintiff had not engaged in substantial gainful employment since the onset of her disability; (ii) that the plaintiff's depression and schizophrenia were considered "severe" under §§ 404.1520(c) and 416.920(c);[1] (iii) that the plaintiff's conditions - either alone or in combination - did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; and (iv) that the plaintiff was unable to perform

---

[1] The ALJ's decision referred to § 416.920(b) but his substantive analysis was correct.

her past relevant work as a retail stock worker, cashier wrapper, grocery cashier, telemarketer, document restorer, or sales attendant but that she did retain the capacity to perform her past relevant work as a poultry processor (Tr. 26-27). Because the ALJ concluded that the plaintiff could still work as a poultry processor, the five-step evaluation ended at step (iv).

This court holds that the ALJ's finding adverse to the plaintiff in step (iii) [that neither of the plaintiff's conditions equaled a listed impairment] was not supported by substantial evidence in the record as a whole. Both the plaintiff's depression and paranoid schizophrenia satisfy the regulatory listings at §§ 12.03 and 12.04 of 20 C.F.R. Pt. 404, Subpt. P, App. 1.

**B.   Standard for Evaluating Schizophrenia and Depression**

*Schizophrenia*

In step (iii) of the five-step evaluation, schizophrenia will qualify as a "listed impairment" if there is "medically documented persistence, either continuous or intermittent, of ... delusions ... or ... emotional withdrawal and/or isolation ... resulting in at least two of the following:

- Marked restriction of activities of daily living;

- Marked difficulties in maintaining social functioning;

- Marked difficulties in maintaining concentration, persistence, or pace; or

- Repeated episodes of decompensation, each of extended duration..."

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.03A, 12.03B. If subsections A and B of § 12.03 are not satisfied, subsection C provides that schizophrenia will still qualify as a listed impairment if there is:

> Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> - Repeated episodes of decompensation, each of extended duration; or
>
> - A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> - Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.03C.

As discussed in the following section of this Decision, this court finds that the plaintiff's schizophrenia satisfies the regulatory listings at §§ 12.03A and 12.03B because there is substantial evidence: (1) of medically documented persistence of emotional withdrawal/isolation; (2) that the plaintiff's difficulties in maintaining social functioning are marked; and (3) that the plaintiff has experienced repeated episodes of extended-duration decompensation. Furthermore, this court finds

that the plaintiff's schizophrenia also satisfies the requirements of § 12.03C because there is substantial evidence: (1) of a chronic paranoid schizophrenic disorder that has interfered with the plaintiff's ability to perform basic work activities; (2) that the plaintiff's symptoms are attenuated by medication and psychosocial support, and; (3) that the plaintiff has experienced repeated episodes of extended-duration decompensation.

### *Depression*

The regulatory standard for evaluating the plaintiff's alleged depression is similar to that for schizophrenia.  In step (iii) of the five-step evaluation, depression will qualify as a "listed impairment" if there is "medically documented persistence, either continuous or intermittent, of ... anhedonia or pervasive loss of interest in almost all activities ... decreased energy ... feelings of guilt or worthlessness ... [and] thoughts of suicide ... resulting in at least two of the following:

- Marked restriction of activities of daily living; or

- Marked difficulties in maintaining social functioning; or

- Marked difficulties in maintaining concentration, persistence, or pace; or

- Repeated episodes of decompensation, each of extended duration..."

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04A, 12.04B.  If subsections A and B of § 12.04 are not satisfied, subsection C

provides that depression will still qualify as a listed impairment if there is:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> - Repeated episodes of decompensation, each of extended duration; or
>
> - A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> - Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.04C.

This court finds that the plaintiff's depression satisfies the requirements of § 12.04A and 12.04B because there is substantial evidence in the record showing: (1) medically documented persistence of anhedonia, decreased energy, feelings of guilt and/or worthlessness, and suicidal ideation; (2) that the plaintiff's difficulties in maintaining social functioning are marked; and (3) that the plaintiff has experienced repeated episodes of extended-duration decompensation.

This court further finds that the plaintiff's depression satisfies the requirements of § 12.04C because there is substantial evidence: (1) of a chronic affective disorder that has interfered

with the plaintiff's ability to perform basic work activities; (2) that the plaintiff's symptoms are attenuated by medication and psychosocial support, and; (3) that the plaintiff has experienced repeated episodes of extended-duration decompensation.

### III. The Plaintiff's Schizophrenia and Depression Qualify as "Listed Impairments" in satisfaction of Step (iii) of the evaluation process.

The plaintiff's schizophrenia and depression qualify as "listed impairments" under subsections A and B of §§ 12.03 and 12.04 because the record contains substantial evidence of medically documented persistence of emotional withdrawal/isolation, anhedonia, decreased energy, feelings of guilt/worthlessness, and suicidal ideation which result in difficulties with social functioning and repeated episodes of extended-duration decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.03A, 12.03B, 12.04A, 12.04B. The plaintiff's conditions also qualify under §§ 12.03C and 12.04C because: there is medically documented history of chronic affective and paranoid schizophrenic disorders that have interfered with the plaintiff's ability to perform basic work activities; the plaintiff's symptoms are attenuated by medication and psychosocial support, and; there is substantial evidence the plaintiff has experienced repeated episodes of extended-duration decompensation. §§ 12.03C, 12.04C.

**A.   The Record Contains Substantial Medical Documentation of the Plaintiff's Persistent, Severe Schizophrenic and Depressive Symptoms.**

The plaintiff's first psychiatric hospital admission was in 1982, at age 18, for an overdose of sleeping pills after her mother's death (Tr. 126, 132, 215). Her next psychiatric admission was in December 1996 following a mental health arrest for depression with suicidal ideation (Tr. 108). She was again hospitalized for suicidal ideation and depressive symptoms in mid-February 2001 and then again for two weeks in March 2001 following a suicide attempt in her car (Tr. 132, 216). At that time, symptoms of insomnia, decreased interest, decreased appetite, and increased guilt were noted (Tr. 132). The plaintiff's discharge diagnosis was "Major Depressive Disorder-NOS-recurrent" (Tr. 133). She was then readmitted three days later after an overdose of Trazodone (sedative/anxiolitic/antidepressant) and alcohol (Tr. 189, 216).

At a March 20, 2001 evaluation by the Ontario County Department of Mental Health, it was noted that the plaintiff presented with: "thinking people could read her thoughts, ideas of reference, paranoid ideations (as evidence by her rumination that people are 'out to get her'), general anxiety symptoms, teariness, hopelessness, and anergia." Id. She was prescribed Geodon (anti-psychotic) but ran out of her medication and was hospitalized for a week in November 2001 (Tr. 277). Her diagnoses included chronic

schizophrenia and schizotypal personality disorder (Tr. 280). Between March 2001 and February 2003, the plaintiff was treated on eighteen occasions by a psychiatric team consisting of Dr. Allen Mariner, M.D., Barbara Caulfield, N.P., and clinical social worker Susan Wilkins (Tr. 215-217, 263-267). The plaintiff's treatment included both individual and group therapy as well as medication reviews (Tr. 224, 395). Between April 2001 and December 2003, the plaintiff received case management services from Lakeview Mental Health on more than fifty occasions (Tr. 306-362).

Lakeview case managers assist individuals with, among other things, attending appointments and managing activities of daily living. See Lakeview Mental Health Services, Inc. service listing webpage, http://www.lakeviewmhs.org/services.html (last visited July 9, 2007). At the administrative hearing, the plaintiff's Lakeview case manager testified that the plaintiff isolates herself in her apartment and is reluctant to go out (Tr. 514). This is primarily because the plaintiff is "afraid of people" (Tr. 515). The case worker would try to motivate the plaintiff to get out of her apartment and would take her to the grocery store because she "couldn't get there herself." Id. While at the grocery store, the case worker would have to keep the plaintiff focused on the grocery list so that she would not become distracted by, and fearful of, the people around her (Tr. 516). The case worker's testimony is consistent with Dr. Mariner's diagnosis of paranoid schizophrenia.

**B.     The ALJ Improperly Assigned Evidentiary Weights to the Treating and Examining Physician Opinions in the Record**.

Staff psychiatrist Allen Mariner of the Ontario Department of Mental Health diagnosed the plaintiff as "schizophrenic, paranoid type" (Tr. 215, 257).  The doctor was part of a psychiatric team that treated the plaintiff no less than eighteen times (Tr. 215-217, 263-267).  He stated that the plaintiff's "paranoia impairs [her] vocational functioning" and that, specifically, she lacks the normal ability to:

- respond appropriately to coworkers and to supervision;
- meet quality standards and production norms, and;
- sustain adequate attendance.

(Tr. 259-61).  Nowhere is Dr. Mariner's opinion mentioned in the ALJ's decision and, furthermore, the ALJ concluded that the plaintiff had "moderate to no mental functioning limitations" based upon an examination by "Ellis Lang, M.D." (Tr. 25).  In his decision the ALJ referred to Exhibit 5F of the Social Security transcript, which was an assessment by Dr. Ellis *Levy*, M.D. (Tr. 198-99).  Dr. Levy examined the plaintiff in March 2001 as part of an employability assessment and his opinion was given priority over Dr. Mariner's without explanation.  Id.

The treating physician rule requires ALJs to give "good reasons" when discounting a treating physician's opinion. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  Because the ALJ failed to explain why he favored Dr. Levy's opinion over Dr. Mariner's, he

improperly discounted a treating physician's opinion that was consistent with other substantial evidence in the record.

Additionally, when taken as whole, Dr. Levy's opinion actually supports a finding of disability (Tr. 198-99). The Medical Employability Assessment that Dr. Levy completed gave three options in each functional category. Id. These were: "No Evidence of Limitations;" "Moderately Limited;" and "Very Limited." Id. Dr. Levy identified five separate areas of limited mental functioning and concluded that the plaintiff was "unable to work at this time." Id. Despite checking the box "Moderately Limited," the doctor's ultimate conclusion that the plaintiff was unable to work is not consistent with the ALJ's conclusion, based upon this very medical opinion, that the plaintiff's limitations were not disabling (Tr. 25). In determining whether a limitation satifies the required "marked" threshold, SSA regulations specify that "marked" means:

> ...more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis.

§ 12.00C; see also 20 C.F.R. §§ 404.1520(a) and 416.920(a). Because the great weight of evidence shows that the plaintiff's limitations interfere seriously with her ability to function independently, effectively, and on a sustained basis, this court finds that the plaintiff's functional limitations satisfy the

"marked" threshold.  The plaintiff has a documented, extensive history of depression and paranoid schizophrenia that substantially interfere with the her ability to perform basic work activities, result in marked difficulties with social functioning, and result in repeated episodes of extended-duration decompensation.

## CONCLUSION

This court finds that the Commissioner's decision was not supported by substantial evidence in the record.  Further, the record contains persuasive proof of disability such that further evidentiary proceedings would serve no further purpose.  I therefore grant judgment on the pleadings in favor of the plaintiff and remand this matter to the Social Security Administration for calculation of benefits.

ALL OF THE ABOVE IS SO ORDERED.


                                      s/Michael A. Telesca
                                        MICHAEL A. TELESCA
                            United States District Judge


Dated:     Rochester, New York
           July 11, 2007